## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**RUSTY JOHNSON,**

      **Plaintiff,**

**v.**                                                                 **Case No. 3:18-cv-01446**

**WESTERN REGIONAL JAIL AUTHORITY;**
**CAPTAIN ALDRAGE;**
**CAPTAIN SAVILLA; and**
**ANY C.O. THAT HAS WORKED IN A5 SECTION,**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

In November 2018, Plaintiff, Rusty Johnson ("Plaintiff"), proceeding *pro se* and incarcerated in the Western Regional Jail in Barboursville, West Virginia, filed a complaint pursuant to 42 U.S.C. § 1983. (ECF No. 2). Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF No. 14). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss, (ECF No. 14), be **GRANTED**; that the Complaint, (ECF No. 2), be **DISMISSED**, with prejudice; and that this action be removed from the docket of the Court.

# I.    <u>Relevant Facts and Procedural History</u>

On November 3, 2018, 19 prisoners incarcerated in the A-5 segregation unit in the Western Regional Jail filed a complaint pursuant to 42 U.S.C. § 1983, alleging the following:

### 1.  Exposure to Human Waste

"As inmates in A5, we are constantly exposed to human wast[e], urin[e], fecal matter and the living conditions in the section are worse than one would find in a dog pound." (ECF No. 2 at 5). The "pod smells of urin[e] and fecal matter," and "[w]e constantly have urin[e] and fecal matter in our section." (*Id.* at 7). "At the beginning of October" an inmate was allowed to clean his cell and "over 10 pounds of trash and human waste from his cell [...] was tossed into our day room where our food [was] brought in." (*Id.*).

### 2.  Exposure to Mold

"Our cells have mold in them." (*Id.* at 7).

### 3.  Limited Hygiene Products

"In our section, we might get razors every 2 weeks if lucky" and "[w]e have had to go without [soap, toilet paper,] clean clothing as well as items to clean our cell[s] and day room." (*Id.* at 7).

### 4.  Limited Recreation Opportunities

"We are denied any outside recreation and barely get out [of] our cells each day." (*Id.* at 8).

### 5.  Limited Food and Medical Treatment

"We see neglect from simple things like [people's] food being eaten by [correctional officers] to refusing them medical help on a daily basis." (*Id.*).

### 6.  Claims Regarding Specific Inmates

"2 inmates in the section (Kenny Hall, Kevin Esque) [were] required to live in their own filth because they are mentally ill and don't know how to take care of themselves." (*Id.* at 5-6). In addition, "[b]oth Kenith Hall and Kevin Esque [were] without clothing for over 2 weeks," and "Kevin Esque [was] also fed through a bean [hole] covered in fecal matter and urin[e]." 7, 8). Further, "a[n] inmate by the name of Jeffrie Turlie ... [repeatedly tried] to cause harm to [himself] 2 or 3 times a week." (*Id.*).

(ECF No. 2). The complaint named as defendants the "Western Regional Jail Authority," Captain Aldridge, Captain Savilla, and "Any C.O. that has worked in A5 section," and the plaintiffs sought prospective injunctive relief and monetary damages. (ECF No. 2 at 1, 6, 9). Upon receiving the complaint, the Court opened an individual civil action for each plaintiff and docketed the complaint in each case. (ECF Nos. 1, 2). The undersigned granted Plaintiff's application to proceed without prepayment of fees and costs and ordered service of the complaint and summonses on the defendants. (ECF No. 6).

After being served with the complaint, Defendants, the Division of Corrections and Rehabilitation ("DCR"),[1] Captain Carl Aldridge, and Captain Samuel Savilla, filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 14). Defendants contend that any claims against DCR and the individual defendants in their official capacities should be dismissed because agencies of the state and agency officials acting in their official capacities are not "persons" amenable to suit under § 1983. (ECF No. 15 at 5). Furthermore, Defendants argue that any claims against them in their personal capacities should be dismissed for failure to state a claim upon which relief may be granted because Plaintiff does not allege a person that caused the conditions, a time period or duration of the conditions, any physical injury from the conditions, or any facts demonstrating an extreme deprivation of Plaintiff's Eighth Amendment rights. (*Id.* at 8-13). Captains Aldridge and Savilla further contend that they are entitled to qualified immunity because Plaintiff does not allege any facts or conduct by them that violated any clearly established statutory or constitutional right of which a reasonable person would have known. (*Id.* at 13-16).

---

[1] As stated by Defendants, the "Western Regional Jail Authority" named in Plaintiff's complaint is not a legal entity. Rather, the Western Regional Jail is a building owned by the State of West Virginia and operated by the DCR. (ECF No. 14 at 1 n.1).

The undersigned entered an order notifying Plaintiff of the pending motion to dismiss and alerting him that he had the opportunity to file a response to the motion through April 1, 2019. (ECF No. 16). Plaintiff did not file a response. Thereafter, on September 18, 2019, the undersigned entered another order, specifically identifying the deficiencies in Plaintiff's complaint that were raised in the motion to dismiss and allowing Plaintiff the opportunity to amend the complaint to correct such deficiencies within 21 days. (ECF No. 19). Plaintiff was ordered to amend the complaint as follows:

1. Set forth a specific factual basis upon which the Court can conclude that Captain Savilla and Captain Aldridge acted with deliberate indifference to Plaintiff's health and safety. As for the correctional officers, Plaintiff must identify specific officers he holds at fault and then state factually how each such officer violated Plaintiff's rights.

2. Plaintiff must identify the nature of the injury he claims to have suffered as a result of the defendants' alleged wrongdoing.

3. To the extent Plaintiff wishes to pursue prospective, non-monetary relief, he must describe the policies or procedures that he deems unconstitutional and name as a defendant the official who is responsible for enforcement of the policy or procedure.

(*Id.* at 5-6). The Court explicitly advised Plaintiff that his failure to amend the complaint as ordered would result in a recommendation that the case be dismissed for failure to state a claim under § 1983. (*Id.* at 6). The final order from this Court was returned undeliverable, and Plaintiff has provided no forwarding address. (ECF No. 20). As Plaintiff was advised, it was his responsibility to promptly notify the Clerk of Court of any changes in his address. (ECF No. 6 at 2). The deadline for Plaintiff to amend his complaint expired without any response from Plaintiff. Plaintiff did not amend the complaint, request an extension to amend the complaint, or contact the Court in any manner regarding this action. Therefore, the motion to dismiss is ripe for resolution.

## II.    <u>Standard of Review</u>

Defendants in this action seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 13, 14). A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Accordingly, the Court will assume that the facts alleged in the amended complaint are true and will draw all reasonable inferences in Plaintiff's favor as the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir. 1988)).

While the Court "take[s] the facts in the light most favorable to the plaintiff, ... [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable

inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Court are required to liberally construe *pro se* complaints, such as the complaint filed herein. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  **Discussion**

Plaintiff's complaint is filed pursuant to 42 U.S.C. § 1983, which provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts

showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of state law. 42 U.S.C. § 1983; *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Sullivan,* 526 U.S. at 50.

### A. Claims for Injunctive Relief

Plaintiff asks the Court to "put a stop" to the behavior of the staff in the A5 section of the Western Regional Jail and "bring to light what has been going on at the Western Regional Jail with the inmates in this section." (ECF No. 2 at 6). He also requests that the Court "see to it" that mentally ill inmates are provided proper care in state custody. (*Id.*). However, after filing his Complaint, Plaintiff was transferred out of the Western Regional Jail, and consequently is no longer incarcerated in that facility, (ECF No. 20); *see* https://dcr.wv.gov/offendersearch/Pages/default.aspx (last accessed Oct. 31, 2019).

As a prerequisite to the exercise of federal jurisdiction, the complaint before the Court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence." *Arizonans*

*for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Defendants are correct that "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir.2007).

A narrow exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). However, "[j]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d 281, at 289 (internal quotation marks and citations omitted).

As this Court recently explained in another civil action pertaining to an identical complaint, given that Plaintiff is no longer incarcerated in the Western Regional Jail, "[a]ny injunctive relief this Court could order with respect to Plaintiff's claims would have no effect whatsoever upon his rights. Nor would such an order serve to redress Plaintiff's alleged injuries, all of which are based on occurrences in Pod Section A-5 of the Western Regional Jail." *Salmons v. W. Reg'l Jail Auth.*, No. 3:18-CV-01447, 2019 WL 5616916, at

8

*4 (S.D.W. Va. Oct. 30, 2019). Plaintiff has provided no indication that he will be transferred back to the WRJ, and then again placed in administrative segregation in the A5 Section, as would be required for Plaintiff to be again subjected to the complained of violations. *Id.* Accordingly, the undersigned **FINDS** that Plaintiff's claims for injunctive relief have been rendered moot by his transfer from the facility where the alleged constitutional violations occurred, and the undersigned **RECOMMENDS** that Plaintiff's claims for injunctive relief be dismissed.

### B. Claims Against DCR

Turning to Plaintiff's remaining claims for monetary compensation, Defendants contend that the DCR should be dismissed from this action because the DCR is immune from liability in a suit for damages under the Eleventh Amendment, and because it is not a "person" amenable to suit under § 1983. (ECF No. 15 at 5-6, 6 n.2).

### 1. *The DCR is Immune Under the Eleventh Amendment to Plaintiff's Claim for Damages*

The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court of the United States ("Supreme Court") has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal Court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity

created by the Eleventh Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Three narrow exceptions to Eleventh Amendment sovereign immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express. In other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal Court." *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988); *Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the state in federal court). Historically, the State of West Virginia and its agencies have not waived sovereign immunity in this type of suit, and there is no indication that they are inclined to do so now. *See Kinder v. PrimeCare Med., Inc.*, No. 3:13-cv-31596, 2015 WL 1276748, at *7 (S.D.W. Va. Mar. 19, 2015); *Skaggs v. W. Reg'l Jail*, No. CIV.A. 3:13-3293, 2014 WL 66645, at *5 (S.D.W. Va. Jan. 8, 2014); *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4

(S.D.W. Va. June 27, 2013). Therefore, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 139 F.3d 1426, 1433 (11th Cir. 1998), *aff'd* 528 U.S. 62 (2000)). In *Will v. Mich. Dept. of State Police*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability under § 1983. *Will,* 491 U.S. 58, 65 (1989). Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government ... unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as potential defendants under § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that interpreting the language of § 1983 "to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014)

("Pursuant to the Eleventh Amendment, a federal Court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). However, ***a state officer*** must be named under this exception and that officer must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id*. Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the DCR is an agency ***and not a state officer***, the third exception to Eleventh Amendment immunity is inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that the lawsuit must name a state official as the defendant, not a state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction.").

In sum, since none of the exceptions apply, the undersigned **FINDS** that the DCR is shielded by the Eleventh Amendment's sovereign immunity from liability on Plaintiff's complaint.

### 2. The DCR is not a "Person" That Can be Sued Under § 1983

In addition, as discussed above, a plaintiff must assert that a *person* deprived him of his federally protected civil right, privilege, or immunity under the color of state law in order to state a viable claim under § 1983. 42 U.S.C. § 1983 (emphasis added). In *Will*, the Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of … § 1983." *Will*, 491 U.S. at 60. Examining the language and purpose of the statute, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would have been barred by the States' sovereign immunity. *Id.* at 66. The holding in *Will* applied not only to lawsuits against the state itself, but also to suits against "public entities and political subdivisions" that were an "arm or alter ego" of the state. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)).

Accordingly, the Court must consider whether the DCR is an arm or alter ego of the state of West Virginia. If so, then Plaintiff cannot maintain a federal civil rights complaint against the DCR, because § 1983 may only be used to file suit against a person. "In determining if a public entity is an alter ego of the state … Courts have generally looked to the standards announced in cases addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state." *Maryland Stadium Auth.,* 407 F.3d at 260. In this case, the query is easily answered as the law is well settled that the DCR is an "arm of the State" of West Virginia and not a "person" under § 1983. *See, e.g., Mitchell v. Janice*, Civil Action No. 1:07-0625, 2009 WL 4666010, *1, n. 3 (S.D.W. Va. 2009) ("[T]he West Virginia Department of Corrections is not a "person" as

required by Section 1983"); *Berry v. Rubenstein*, No. 01:07–cv–535, 2008 WL 1899907, at *2 (S.D.W. Va. April 25, 2008) (same); *Rakes v. Rush*, No. CIV.A. 2:09-018, 2009 WL 2392097, at *7 (S.D.W. Va. Aug. 4, 2009) (same).

Therefore, the undersigned **FINDS** that the DCR, as an arm of the state of West Virginia, is not a "person" subject to liability under § 1983, and the undersigned **RECOMMENDS** that Plaintiff's claims against the DCR be dismissed.

### C. Claims Against Individual Defendants

Given the fact that the DCR must be dismissed from this action for the reasons stated above, the undersigned next considers Plaintiff's claims against the remaining defendants: Captain Aldridge, Captain Savilla, and "[a]ny CO that has worked in A5 section." (ECF No. 2 at 1). As an initial matter, the undersigned notes that Plaintiff's broad reference to any correctional officer that worked in A5 section fails to identify a particular defendant or person that allegedly violated his rights. *See, e.g., Gozo v. Chesapeake Det. Facility*, No. PX-18-3934, 2019 WL 1331084, at *3 (D. Md. Mar. 22, 2019) ("Using the term 'Staff' to name certain defendants does not adequately identify the persons whom Gozo alleges have violated his civil or constitutional rights, as required in § 1983 actions [...] 'Staff' is far too vague and amorphous for the Court or Defendants to know which individuals may be held to account for any supposed wrongdoing. Thus, Defendants 'All Housing Unit Staff,' 'All Inmate Trust Fund Staff,' and 'All Food Service Staff' are dismissed."). As to Plaintiff's claims against Captains Aldridge and Savilla, Plaintiff did not explicitly specify whether he sued the individual defendants in their official or personal capacities. (ECF No. 2). Therefore, the undersigned considers both alternatives.

### 1. *Official Capacity Claims*

In *Will*, the Supreme Court held that a state's officials "acting in their official

14

capacities" were not "persons" under § 1983, explaining: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official; rather, it is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71. The Supreme Court later clarified its holding in *Will,* making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo,* 502 U.S. 21 (1991). The Court indicated that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25 (citing *Graham,* 473 U.S. at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The significance of this distinction is key to the viability of a § 1983 complaint against a state official. As a general proposition, the doctrine of sovereign immunity bars suit against a state. *Will,* 491 U.S. at 67. By extension, sovereign immunity precludes claims for money damages against state officials acting in their official capacities, including claims brought pursuant to § 1983. *Id.* at 71. In contrast, a suit for money damages brought against a state official, who acted in his personal capacity under color of state law, is not barred by the doctrine of sovereign immunity. *Hafer,* 502 U.S. 30. Instead, a state official sued in his personal capacity under § 1983 must rely upon "personal immunities," such as qualified immunity, to bar suit. *Id.* at 31.

The determination of whether a defendant has been named in his official or personal capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated*

*on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a plaintiff does not allege capacity explicitly, the Court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* Court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* Court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* Court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 Fed. App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

In this case, Plaintiff does not expressly state that Defendants acted in accordance with an official policy, and he seeks both equitable relief and money damages. (ECF No. 2). To the extent that Plaintiff seeks money damages from Defendants for acts done in their official capacities, the undersigned **FINDS** that Defendants are not "persons" liable for money damages under § 1983; instead, they are arms of the state of West Virginia entitled to Eleventh Amendment immunity. Therefore, the undersigned respectfully **RECOMMENDS** that Plaintiff's monetary claims against Defendants in their official

capacities be dismissed.

### 2. *Personal Capacity Claims*

Finally, the undersigned considers Plaintiff's personal capacity claims against Defendants. As the undersigned explained to Plaintiff in the September 18, 2019 Order, § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Moreover, for an official to be liable under § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle,* 323 F. Supp. 203, 214 (D. Md. 1971)).

Plaintiff alleges that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution by denying him safe and sanitary living conditions. The Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (*citing Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Farmer*, 511 U.S at 833 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). Thus, not every uncomfortable condition of confinement

is actionable. *Rhodes,* 452 U.S. at 347. Ultimately, this prohibition "does not mandate comfortable prisons, and only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes,* 452 U.S. at 347).

In order for Plaintiff to prosecute a case against the named defendants, he must show both (1) the deprivation of a basic human need that was "sufficiently serious," when measured by an objective standard, and (2) that the responsible prison officials had a "sufficiently culpable state of mind." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [Plaintiff] must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler,* 989 F.2d at 1370–80).

"*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with

18

a failure to issue blankets." *Wilson*, 501 U.S. at 304 (emphasis in original). However, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

To fulfill the subjective component, Plaintiff must demonstrate that each individual named in the complaint acted with "deliberate indifference" to Plaintiff's health or safety. *Farmer*, 511 U.S. at 834. The Supreme Court explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Flores v. Stevenson,* Civil Action No. 2:11–cv–01278–TMC–BHH, 2012 WL 2803721 (D.S.C. May 11, 2012). Put simply, the individuals named in the complaint would have a sufficiently culpable state of mind if they were each aware of an excessive risk of harm to Plaintiff's health or safety, but disregarded it. *See Wilson*, 501 U.S. at 298; *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)) ("[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.")

In addition to the legal principles set forth above, Plaintiff's claims are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Although the PLRA does not define "physical injury"

and the Fourth Circuit has not provided a definition, other Courts have held that the "physical injury" referenced by the Act need not be significant, but it must be more than *de minimis. See, e.g., Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir. 2002); *Siglar v. Hightower,* 112 F.3d 191 (5th Cir. 1997); *Zehner v. Trigg,* 952 F. Supp. 1318 (S.D. Ind. 1997). "A plaintiff seeking compensatory damages for emotional injuries cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001), *quoting Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996) (internal quotation marks omitted).

Defendants additionally argue that they are entitled to qualified immunity in this action because Plaintiff failed to articulate any facts demonstrating that they engaged in conduct which violated Plaintiff's clearly established rights. Government officials performing discretionary functions may be protected from monetary damages under the doctrine of qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). This doctrine protects law enforcement officers in the exercise of their official duties from the risk of personal liability for making "bad guesses in gray areas," ensuring that they are only responsible for "transgressing bright lines." *Marciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.

20

1992). As the United States Supreme Court explained in *Pearson v. Callahan:*

> "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

In determining the applicability of qualified immunity, the Court must consider two questions: (1) whether a constitutional or statutory right would have been violated on the facts alleged by plaintiff, and (2) whether the right asserted was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232. These questions may be answered in any order that "[would] best facilitate a fair and efficient disposition of each case." *Id.* at 242. If a Court finds that a claimed constitutional right was not clearly established at the time of the alleged wrongdoing, the Court may dispose of the case without engaging in the pointless exercise of determining whether the facts alleged actually establish a violation of that right. *Id.* Similarly, if a Court determines that the facts alleged by the plaintiff do not support a reasonable inference that a constitutional right was violated, the analysis terminates, and the complaint is subject to dismissal for failure to state a claim.

In this case, Plaintiff alleges that his Eighth Amendment rights were violated because he and other inmates were exposed to human waste and mold; provided insufficient hygiene items, cleaning products, recreation opportunities, food, and medical treatment; and because certain inmates were mistreated during their incarceration. (ECF No. 2). Each claim is discussed below, in turn.

### a. Exposure to Human Waste

Plaintiff alleges, "[a]s inmates in A5, we are constantly exposed to human [waste, urine], fecal matter and the living conditions in the section are worse than one would find in a dog pound." (ECF No. 2 at 5). He contends that the "pod smells of urin[e] and fecal matter," stating, "[w]e constantly have urin[e] and fecal matter in our section." (*Id.* at 7). Finally, he states that "[a]t the beginning of October [there] was a day" when an inmate was allowed to clean his cell and "over 10 pounds of trash and human waste" from the cell "was tossed into our day room where our food [was] brought in." (*Id.*).

"Deprivation of basic sanitary conditions such as exposure to human waste without the ability to clean oneself can constitute an Eighth Amendment violation." *Jones v. Solomon*, No. 1:18-CV-89-FDW, 2018 WL 6247265, at *11 (W.D.N.C. Nov. 29, 2018) (collecting cases and holding that the plaintiff alleged a viable Eighth Amendment claim when he was forced to search through his own excrement for contraband without personal protection equipment or hygiene materials). In fact, "[c]ourts have repeatedly held that leaving a prisoner in a cell containing human waste is sufficiently dangerous to an inmate's health and safety as to satisfy the objective prong" of the Eighth Amendment test. *Clark v. Daddysman*, No. CV TDC-16-0921, 2018 WL 1453333, at *10 (D. Md. Mar. 22, 2018), *appeal dismissed sub nom. Clark v. Gelsinger*, 738 F. App'x 244 (4th Cir. 2018) (collecting cases and stating that inmate alleged a plausible Eighth Amendment claim

when he stated that he was moved to a feces-covered cell and spent days cleaning it, getting feces on his shoes, wheelchair, and hands, and the cell "reeked" of human waste even after the cleaning, so that he felt sick and could not eat); *also Tyree v. Brooks*, No. 7:09-CV-00216, 2009 WL 2232455, at *2 (W.D. Va. July 24, 2009) (citing *Despain v. Uphoff,* 264 F.3d 965, 972 (10th Cir. 2001) (finding contact with human waste sufficiently serious when inmates were locked in flooded cells with water contaminated with urine and floating feces and inmates were served food from a cart that allowed the contaminated water to contact the inmates' food)). "Not surprisingly, human waste has been considered particularly offensive so that 'Courts have been especially cautious about condoning conditions that include an inmate's proximity to it." *Id*.

However, as this Court has emphasized, "the mere smell or presence of human waste is not sufficiently serious to constitute a violation of the Eighth Amendment." *Salmons*, 2019 WL 5616916, at *6. "Cases where similar conditions have been found to be an objectively serious deprivation sufficient to violate the protections provided by the Eighth Amendment generally involve either prison officials acting deliberately in creating the unsanitary conditions, the conditions lasting for an extended and unreasonable amount of time, or both." *Whitmore v. W. Reg'l Jail*, No. 3:18-CV-01483, 2019 WL 3756396, at *8 (S.D.W. Va. July 19, 2019), *report and recommendation adopted,* 2019 WL 3759806 (S.D.W. Va. Aug. 7, 2019) (collecting cases). Given these standards, Plaintiff's claims are insufficient to allege an Eighth Amendment violation under prevailing law. *Whitmore*, 2019 WL 3756396, at *7-8 (collecting cases); *Salmons*, 2019 WL 5616916, at *6.

Unlike the above cases, Plaintiff herein makes no express claim that he came into direct physical contact with human waste for an extended and unreasonable amount of

time, or that human waste contacted or contaminated his food. (ECF No. 2). Rather, reading the complaint most favorably to Plaintiff, he alleges that he "constantly" saw and smelled urine and feces in the cells and the common areas of the A5 pod, but he does not allege that he was injured in any manner due to the exposure. (*Id.*). While the sight and odor of human waste is distasteful, Plaintiff's allegations do not rise to the level of cruel and unusual punishment under the Eighth Amendment. *See, e.g., Harris v. FNU Connolly,* No. 5:14-cv-128-FDW, 2016 WL 676468, at *5 (W.D.N.C. Feb. 18, 2016), *aff'd,* 667 F. App'x 408 (4th Cir. 2016) (holding that unsanitary cell conditions, including the presence of feces, urine, and vomit was less than ideal, but "[s]hort-term sanitation problems, while unpleasant, do not amount to constitutional violations") (citation omitted); *DePaola v. Ray*, No. 7:12-CV-00139, 2013 WL 4451236, at *10 (W.D. Va. July 22, 2013), *report and recommendation adopted*, 2013 WL 4453422 (W.D. Va. Aug. 16, 2013) (finding that the plaintiff's claim that he "suffered from nausea [and psychological trauma] due to the smell of other prisoners smearing their feces/urine while in the B–3 pod" did not demonstrate a violation of a basic human need or a sufficiently serious or significant injury); *Hubbard v. Kanode*, No. CIV.A. 7:06-CV-00679, 2006 WL 3476656, at *1 (W.D. Va. Nov. 30, 2006) (holding that the plaintiff's allegation that he was exposed to the smell of human waste for 26 days, which caused nose bleeds and sores in his nose, did not state a claim under the Eighth Amendment, explaining "[t]he Court does not doubt that Hubbard's exposure to the smell of human waste was unpleasant and unappetizing. However, even assuming that Hubbard experienced nose bleeds and sores as a result of the smell, as he alleges, such impairments do not rise to the level of a serious or significant physical injury.").

24

Furthermore, even if Plaintiff's complaint satisfies the objective component of the Eighth Amendment test, Plaintiff does not allege that any of the named defendants or any other specific officials knew of and disregarded an excessive risk to his health or safety. To fulfill the subjective component, Plaintiff must demonstrate that each individual named in the complaint acted with "deliberate indifference" to his health or safety. *Farmer*, 511 U.S. at 834. "A plaintiff must affirmatively show that a defendant acted personally in the deprivation of his or her constitutional rights," and "[w]hen a complaint contains no personal allegations against a defendant, that defendant is properly dismissed." *Coker v. Powers*, No. 4:10-2197-HFF, 2010 WL 4349537, at *2–3 (D.S.C. Sept. 16, 2010) (citing *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977)).

"While Plaintiff is not required to plead facts sufficient to prove his case as an evidentiary matter in the complaint, he must allege facts that support a claim for relief, and the Court "is not required to develop tangential claims from scant assertions in the complaint." *Id.* (citing *Bass v. Dupont,* 324 F.3d 761, 765 (4th Cir. 2003) and *Beaudett,* 775 F.2d 1274). Here, Plaintiff does not make any personal allegations against the named Defendants or attribute his "exposure to waste" claims to any particular person, which is insufficient to state a claim under § 1983. *Coker*, 2010 WL 4349537, at *2–3 (finding that plaintiff who alleged that he was exposed to human waste due to an inadequate or unsanitary toilet system that caused him to develop a rash and experience bouts of illness was subject to summary dismissal because the plaintiff did not provide sufficient factual information to state a claim against the only named defendant in the case).

Therefore, the undersigned **FINDS** that Plaintiff fails to state a claim under the Eighth Amendment regarding his alleged exposure to human waste, and the undersigned **RECOMMENDS** that such claims be dismissed.

### b. Mold

Plaintiff next contends that the "cells have mold in them." (ECF No. 2 at 7). However, Plaintiff does not assert any injury related to mold exposure, much less a significant injury, and he does not assert that any of the named defendants were aware of the existence of mold and disregarded the risk to Plaintiff's health or safety, as required to establish an Eighth Amendment violation. *See, e.g., Dobbins v. McDowell Cty. Corr. Ctr.*, No. 1:13-CV-31843, 2016 WL 7043019, at *4 (S.D.W. Va. Oct. 4, 2016), *report and recommendation adopted,* No. 1:13-CV-31843, 2016 WL 7031902 (S.D.W. Va. Dec. 1, 2016) ("Although Plaintiff alleges that he is allergic to black mold, Plaintiff does not allege that he is experiencing serious symptoms or side effects from his alleged exposure. Therefore, the undersigned finds that Plaintiff has failed to state a claim under the Eighth Amendment for which relief can be granted."). *Willis v. Clark*, No. 3:12-CV-03452, 2012 WL 5397115, at *7 (S.D.W. Va. Oct. 9, 2012), *report and recommendation adopted,* 2012 WL 5397113 (S.D.W. Va. Nov. 5, 2012) ("In regard to Willis's claims of finding mold on the shower ceilings [...] Willis fails to satisfy the objective prong of an Eighth Amendment claim because he has not alleged any "serious or significant physical or emotional injury" or substantial risk thereof resulting from these conditions."); *Shrader v. White,* 761 F.2d 975, 984 (4th Cir. 1985) (finding no Eighth Amendment violation where there was "no evidence of disease resulting from mold in the showers").

Therefore, the undersigned **FINDS** that Plaintiff fails to state a claim under the Eighth Amendment regarding exposure to mold, and the undersigned **RECOMMENDS** that such claim be dismissed.

### c. Hygiene Items

Plaintiff next asserts, "[i]n our section, we might get razors every 2 weeks if lucky,"

and "[w]e have had to go without [soap, toilet paper,] clean clothing as well as items to clean our cell[s] and day room." (ECF No. 2 at 7). While an extended deprivation of hygiene items that causes injury to an inmate could foreseeably establish an Eighth Amendment violation, Plaintiff does not allege such facts in the Complaint. Plaintiff does not specifically allege the duration of the alleged conditions, but his Complaint indicates that the he was only deprived of hygiene items at certain times as opposed to a total deprivation throughout his incarceration. Further, Plaintiff does not allege any injury that resulted from the lack of hygiene items or any person that was deliberately indifferent to his rights, which are required elements of an Eighth Amendment claim. *Ash v. Greenwood*, No. 2:17-CV-03022, 2018 WL 4201398, at *6 (S.D.W. Va. Aug. 30, 2018) ("[T]he temporary deprivation of a mattress, bedding, clothing, or hygiene products, without a showing of an actual physical injury resulting therefrom, does not rise to the level of an Eighth Amendment violation."); *Lore v. Wilkes*, No. 1:12CV165, 2013 WL 5935072, at *7 (M.D.N.C. Nov. 1, 2013) (holding that the plaintiff's allegation that he was denied personal grooming materials failed to state a claim, "particularly given the Complaint's lack of factual matter indicating that he suffered any harm."); *Eakle v. Grover Rosencrance*, No. 2:09-CV-00105, 2009 WL 6057260, at *1, *3 (N.D.W. Va. Dec. 4, 2009), *report and recommendation adopted*, 2010 WL 1006602 (N.D.W. Va. Mar. 17, 2010) (finding that the denial of soap, shampoo, deodorant, and toothpaste in the segregation unit failed to state a claim under the Eighth Amendment); *Binns v. Clarke*, No. 7:12-CV-00162, 2012 WL 1438258, at *3 (W.D. Va. Apr. 25, 2012) (finding that the plaintiff, who alleged that he was denied toilet paper, soap, toothpaste, and a toothbrush did not state an extreme deprivation of his rights, and the plaintiff did not make specific allegations that the named defendants denied him any of those items).

Consequently, the undersigned **FINDS** that Plaintiff fails to state a claim under the Eighth Amendment regarding the limited provision of razors, soap, toilet paper, clean clothing, and cleaning products, and the undersigned **RECOMMENDS** that such claims be dismissed.

### d. Recreation

Plaintiff alleges in the Complaint, "[w]e are denied any outside recreation and barely get out [of] our cells each day." (ECF No. 2 at 8). Addressing Plaintiff's first statement that he was not allowed outdoors, "[i]t is well settled that jails may provide space for indoor exercise and recreation as an alternative to outdoor recreational facilities, absent medical evidence demonstrating a need for outdoor exercise." *Jones v. Kelly*, 1990 WL 33936, at *1 (4th Cir. 1990) (citing *Clay v. Miller,* 626 F.2d 345 (4th Cir. 1980)) ("Jones was provided with indoor recreational opportunities and does not allege any harm from being unable to exercise outdoors"). Regarding Plaintiff's allegation that he was barely let out of his cell, prisoners should generally be permitted some regular out-of-cell exercise." *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992). However, the denial of out-of-cell exercise opportunities is not *per se* unconstitutional cruel and unusual punishment. *Id.* "[P]enological considerations may, in certain circumstances, justify restrictions." *Id.*

In this case, Plaintiff does not allege that he was denied any recreation opportunities or confined to his cell at all times. Therefore, he fails to state a deprivation of his constitutional rights. *Goodwin v. Schwartz*, No. 8:10-1760-CMC-BHH, 2010 WL 3489092, at *2 (D.S.C. Aug. 11, 2010), *report and recommendation adopted,* 2010 WL 3489097 (D.S.C. Sept. 1, 2010) (stating that the plaintiff "does not complain that he is not getting any recreation, nor does he complain that he is not allowed out of his cell for

recreation. He simply alleges that he is not getting the amount to which he believes he is entitled. Therefore, he has failed to state a claim for cruel and unusual punishment."); *Joyner v. Patterson*, No. 0:13-CV-2675-DCN, 2014 WL 3909531, at *4 (D.S.C. Aug. 11, 2014), *aff'd*, 597 F. App'x 748 (4th Cir. 2015) (finding that plaintiff who stated that he was "allowed no outside recreation" failed to state a claim); *Godfrey v. Washington Cty.*, No. 7:06-CV-00187, 2006 WL 1171940, at *2 (W.D. Va. Apr. 28, 2006) ("Even after the Court advised Godfrey to particularize his claims, his amended allegations fall short under this standard as to several claims," including his claim that he was denied "adequate recreation, fresh air, and sunlight."). Furthermore, Plaintiff does not attribute his lack of recreation opportunities to any named defendant or other specific individual. In other words, Plaintiff does not allege that a person knowingly disregarded a risk to his health or safety to satisfy the subjective component of the Eighth Amendment test.

Therefore, the undersigned **FINDS** that Plaintiff fails to state a claim under the Eighth Amendment regarding the denial of outside recreation and limited time out of his cell, and the undersigned **RECOMMENDS** that such claims be dismissed.

### e. Food and Medical Treatment

Plaintiff next asserts, "[w]e see neglect from simple things like people's food being eaten by CO's to refusing them medical help on a daily basis." (ECF No. 2 at 8). The Eighth Amendment "imposes a duty on prison officials to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). "Allegations of inadequate food for human nutritional needs or unsanitary food service facilities are sufficient to state a cognizable constitutional claim, so long as the deprivation is serious and the defendant is deliberately indifferent to the need." *King v. Lewis*, 358 F. App'x

459, 460 (4th Cir. 2009).

Regarding his statement that correctional officers ate inmates' food, Plaintiff does not assert that he received inadequate nutrition or that he suffered any harm from exclusion of meals. In fact, he does not specifically assert that Defendants ate his food. Therefore, Plaintiff fails to assert a viable claim for relief under the Eighth Amendment. *Smith v. N. Carolina Dep't of Safety,* No. 1:18CV914, 2019 WL 1506658, at \*6 (M.D.N.C. Apr. 5, 2019), *report and recommendation adopted,* 2019 WL 3798457 (M.D.N.C. Aug. 13, 2019) ("[T]he Complaint does not allege facts sufficient to demonstrate that Plaintiff received inadequate nutrition at any point. In fact, the Complaint does not even identify any harm from any exclusion from meals. Under these circumstance[s], the Complaint fails to state explain any claim for relief based on denial of meals."); *Benjamin v. Higgs*, No. 1:08-CV-00836 JCC/TRJ, 2009 WL 483149, at \*3 (E.D. Va. Feb. 25, 2009), *aff'd sub nom. Benjamin v. Unknown Last Name*, 326 F. App'x 183 (4th Cir. 2009) (dismissing claim because the plaintiff made "no allegation in his amended complaint that he suffered any injury whatever as the result of the meals he has received in prison.").

Regarding medical care, "[i]t is well-settled that prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if they can show 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Cameron v. Sarraf*, 128 F. Supp. 2d 906, 910–11 (E.D. Va. June 12, 2000), *aff'd,* 232 F.3d 886 (4th Cir. 2000) (quoting *Estelle v. Gamble,* 429 U.S. 97, 105–06 (1976)). However, Plaintiff does not state any medical need, much less a serious one, to which Defendants were deliberately indifferent. His bare assertion that prisoners are denied "medical help on a daily basis" provides no specific allegations toward any

defendant or any information to state a cognizable Eighth Amendment claim. (ECF No. 2 at 8).

Therefore, the undersigned **FINDS** that Plaintiff fails to state a claim under the Eighth Amendment regarding lack of nutrition or medical care, and the undersigned **RECOMMENDS** that such claims be dismissed.

### f. Claims Regarding Other Inmates

Finally, Plaintiff asserts various claims relating to other inmates, stating that two inmates in A5 section named Kenny Hall and Kevin Esque were "required to live in their own filth because they are mentally ill and don't know how to take care of themselves" and were "without clothing for over 2 weeks," that "Kevin Esque [was] also fed through a bean [hole] covered in fecal matter and urin[e]," and "a[n] inmate by the name of Jeffrie Turlie … [repeatedly tried] to cause harm to [himself] 2 or 3 times a week." (*Id.* at 5-6, 7, 8). Plaintiff does not have standing to assert claims on behalf of other inmates, and such claims must be dismissed. *Alvarez v. Maryland Department of Corr.*, No. PX-17-141, 2018 WL 1211533, at *13 n.13 (D. Md. Mar. 8, 2018) ("To the extent that Alvarez complaint intended to raise claims on behalf of other inmates, he may not so.") (citing *Inmates v. Owens*, 561 F.2d 560, 563 (4th Cir. 1977)); *Morton v. Sheeley*, No. 3:12-CV-122, 2014 WL 3700011, at *20 (N.D.W. Va. July 24, 2014) ("Thus, to the extent the Plaintiff is attempting to raise claims on behalf of other inmates, those allegations should be disregarded as he has no standing to bring a claim on behalf of another person.").

Therefore, given the fact that the Complaint viewed in the light most favorable to Plaintiff does not state a claim that Defendants violated his constitutional rights, the undersigned **FINDS** that Defendants are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities. *Ash*, 2018 WL 4201398, at *7 ("Because

Ash's Complaint fails to state a plausible violation of any clearly established constitutional right, I **FIND** that all of the defendants are entitled to qualified immunity on Ash's claims against them.").

## IV.   <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' motion to dismiss, (ECF No. 14); **DISMISS** the Complaint, **with prejudice**, (ECF No. 2); and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, Defendants, any counsel of record, and any unrepresented parties.

**FILED:** November 4, 2019

Cheryl A. Eifert
United States Magistrate Judge